# NO. 12-11-00381-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DUJUAN C. BUREAU,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Dujuan C. Bureau appeals his conviction for the offense of continuous sexual abuse of a child. In two issues, Appellant argues that trial counsel provided ineffective assistance, which prevents this court from having confidence that the trial resulted in a just verdict. We affirm.

### BACKGROUND

Appellant was involved in a romantic relationship with the victim's mother. In January 2011, Appellant had a domestic dispute with the victim's mother at their home. The argument occurred in the presence of the victim, who was nine years old at the time. The victim's mother was upset and drove away from their home with the victim and the couple's two other children in the car. While in the car, the victim told her mother that Appellant had sexually abused her on several occasions through most of 2010 and continuing into 2011. The victim's mother stopped and called the police.

The victim was taken to the hospital, where Nurse Julie Rials conducted a sexual assault nurse examination (SANE) on the victim. The victim gave a detailed statement to Nurse Rials describing the abuse. The SANE revealed the presence of trauma to the victim's hymen that

could have resulted from sexual intercourse. The next day, the victim completed a forensic interview with Becky Cunio at the Children's Advocacy Center (CAC). The victim described the abuse in great detail. Based on this information, Detective Kevin Fite of the Smith County Sheriff's Office obtained a search warrant for the home where the victim lived. There he located a container of baby oil in a drawer that the victim said had been used as a lubricant during the abuse. Detective Fite also interviewed the victim's mother and Appellant. During the investigation, DNA testing was completed on a hair found on the victim's vaginal swab during the SANE. It was determined that the hair did not belong to Appellant.

Based on all of the information obtained during his investigation, Detective Fite obtained an arrest warrant for Appellant. Appellant was arrested and indicted for the felony offense of continuous sexual abuse of a child under the age of fourteen. He pleaded not guilty and elected to proceed to a trial by jury. At trial, the victim testified that Appellant molested her on several occasions, and described in great detail where, when, and how the abuse occurred. Appellant attempted to develop evidence that the victim never displayed any signs of abuse during the time period in question. Appellant also testified that he did not commit the alleged acts and discussed motivations that the child and her mother had to fabricate the events or mislead investigators regarding his behavior. The jury disbelieved Appellant and found him guilty. The trial court assessed Appellant's punishment at life imprisonment. This appeal followed.

## CUMULATIVE ERROR

In his first issue, Appellant argues that his trial counsel provided ineffective assistance of counsel. In his second issue, Appellant contends that the ineffective assistance rendered prevents this court from having confidence that the verdict was just.

Appellant acknowledges that trial counsel's alleged shortcomings, when viewed in isolation, do not warrant reversal of his conviction. Rather, he argues, when viewed in combination, the cumulative effect of the errors deprived him of effective assistance of counsel such that we must conclude that the verdict was unjust.

Appellant specifically claims that trial counsel failed to object to improper jury argument when the prosecutor allegedly attacked Appellant over the shoulders of counsel and accused defense counsel of unethical behavior. He also alleges that trial counsel was ineffective when he

failed to object to Detective Fite's comments on Appellant's invocation of the right to remain silent. Since these complaints are components of the cumulative error issues, we address them together.

**Standard of Review**

Claims of ineffective assistance of counsel are evaluated under the two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The first step requires the appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. To satisfy this step, the appellant must identify the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation, but will judge the claim based on the totality of the representation. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

To satisfy the *Strickland* standard, the appellant is also required to show prejudice from the deficient performance of his attorney. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). To establish prejudice, an appellant must prove that but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In any case considering the issue of ineffective assistance of counsel, we begin with the strong presumption that counsel was effective. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We must presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See id.* Appellant has the burden of rebutting this presumption by presenting evidence illustrating why his trial counsel did what he did. *See id.* Appellant cannot meet this burden if the record does not affirmatively support the claim. *See Garza v. State*, 213 S.W.3d 338, 347–48 (Tex. Crim. App. 2007) (without record indicating reasons for a trial counsel's actions or intentions, court presumed trial counsel had reasonable trial strategy for not offering mitigating evidence at punishment phase); *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (inadequate record on direct appeal to evaluate whether trial counsel provided ineffective assistance); *Phetvongkham v. State*, 841

S.W.2d 928, 932 (Tex. App.—Corpus Christi 1992, pet. ref'd, untimely filed) (inadequate record to evaluate ineffective assistance claim); *see also* **Beck v. State**, 976 S.W.2d 265, 266 (Tex. App.—Amarillo 1998, pet. ref d) (inadequate record for ineffective assistance claim, citing numerous other cases with inadequate records to support ineffective assistance claim).

A record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim. *See* **Kemp v. State**, 892 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Before being condemned as unprofessional and incompetent, defense counsel should be given an opportunity to explain his or her actions. *See* **Bone v. State**, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Thus, absent a properly developed record, an ineffective assistance claim must usually be denied as speculative, and, further, such a claim cannot be built upon retrospective speculation. *Id.* at 835.

**Applicable Law**

**1. Cumulative Error**

The doctrine of cumulative error provides that the cumulative effect of several errors can, in the aggregate, constitute reversible error, even though no single instance of error would. *See* **United States v. Munoz**, 150 F.3d 401, 418 (5th Cir. 1998); **Chamberlain v. State**, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (stating, in dicta, that cumulative error could constitute reversible error). The cumulative error doctrine provides relief only when constitutional errors so fatally infected the trial that they violated the trial's fundamental fairness. **United States v. Bell**, 367 F.3d 452, 471 (5th Cir. 2004); **Estrada v. State**, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010) (two or more errors that may have occurred during guilt-innocence phase of trial do not necessarily render trial fundamentally unfair). There is, however, "no authority holding that non-errors may in their cumulative effect cause error." **Chamberlain**, 998 S.W.2d at 238; *see* **Turner v. State**, 87 S.W.3d 111, 118 (Tex. Crim. App. 2002).

**2. Improper Argument**

There are four categories of permissible jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; and (4) a plea for law enforcement. **Gallo v. State**, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). "When a prosecutor makes uninvited and unsubstantiated accusations of improper conduct directed toward a defendant's attorney, in an attempt to prejudice the jury against the defendant,

4

courts refer to this as striking [at] a defendant over the shoulders of his counsel." ***Phillips v. State***, 130 S.W.3d 343, 355 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (op. on reh'g). The state may not strike at a defendant over the shoulders of defense counsel or accuse counsel of bad faith or insincerity during argument. *See **Gallo***, 239 S.W.3d at 767; ***Harris v. State**,* 122 S.W.3d 871, 886 (Tex. App.—Fort Worth 2003, pet. ref'd). This prohibition protects the defendant from improper character attacks on defense counsel. ***Davis v. State**,* 268 S.W.3d 683, 713 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing ***Coble v. State**,* 871 S.W.2d 192, 205 (Tex. Crim. App. 1993)). A prosecutor risks improperly striking at a defendant over the shoulders of counsel when his argument refers to defense counsel personally and when the argument explicitly impugns defense counsel's character. ***Mosley v. State**,* 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g). The issue must be preserved for appeal by making a timely objection, or else such complaints are waived. *See **Cockrell v. State**,* 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

### 3. Comment on invocation of right to remain silent

A comment on a defendant's postarrest silence violates the Fifth Amendment prohibition against self-incrimination. ***Dinkins v. State**,* 894 S.W.2d 330, 356 (Tex. Crim. App. 1995). Commenting on a defendant's postarrest silence is akin to a comment on his failure to testify at trial because it attempts to raise an inference of guilt arising from the invocation of a constitutional right. ***Id**.* A prosecutor's comment amounts to an impermissible comment on a defendant's postarrest silence only if, when viewed from the jury's standpoint, the comment is manifestly intended to be, or is of such a character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's silence. ***Wead v. State**,* 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); ***Bustamante v. State**,* 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). This type of error must be preserved by a contemporaneous objection. ***Heidelberg v. State**,* 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).

### Discussion

### 1. Striking at defendant over the shoulders of counsel during jury argument

Appellant argues that the following statements made during the State's argument constitute striking at him over the shoulders of his counsel.

> Thank you, Your Honor. What you just heard is what I like to call [defense counsel] read[ing] right [out] of the pedophile playbook. That's what it is. Because, you see, when these

pedophiles, like him, they pick their victims. And they base it on, number one, the little kids won't have the courage to say anything. And, number two, if they do, they're a little child. And because they're a little child, they might get mixed up here and there.

And three in the pedophile playbook is: Don't leave any sort of evidence or semen or anything around. And if they follow that playbook, they think they can get away with it. But when they get busted, what do they do? They hand the pedophile playbook over to their attorney. And then what does the attorney try to do? Give it to you. And if you want to buy into the pedophile playbook that you just heard [defense counsel] read out of, then go right ahead. But all you're doing is adopting the mindset of a pedophile.

. . . .

[Defense counsel] also ran another thing that I like to call the thug playbook. Because make no mistake about it, he's a molester and he's just a straight running thug is all he is. And what do thugs do when they're busted? What are the first things you do? You go after the police. Right out of the thug playbook when you get busted. And you hand it over to your attorney. Run the thug playbook, which is the police didn't do their job.

Specifically, Appellant contends that prosecutor called defense counsel a "pedophile" and a "thug," while also directing those terms directly to Appellant to strike at him improperly. The record, taken as a whole, in context, shows that the State was not calling defense counsel a pedophile or a thug. Rather, the prosecutor implied that Appellant himself was a pedophile and a thug, and that he directed his attorney to present the "playbook" to the jury in an effort to obtain a not guilty verdict.

These statements were made during the State's rebuttal, after defense counsel argued to the jury that the victim's story contained inconsistencies, implying that the incidents in question did not occur. Defense counsel also pointed to the lack of DNA evidence implicating Appellant, specifically mentioning that a hair found during the SANE, and tested against Appellant's DNA profile, was determined to not belong to Appellant. Defense counsel also surmised that, had the police undertaken a more thorough investigation, they could have discovered the true donor of the hair, and that the unknown person might be identified as the true perpetrator.[1] The implication of defense counsel's argument is that he urged the jury to infer that the lack of physical evidence, the supposedly incomplete investigation by the police, and the alleged inconsistencies in the victim's version of the events in question show that Appellant did not commit the offense. The State responded to these arguments with the complained of statements, which, in general, it is permitted

---

[1] The hair was not tested to determine if it could have been the victim's own pubic hair or that of some third party.

6

to do. *See Brown v. State*, 270 S.W.3d 564, 572 (Tex. Crim. App. 2008).

Furthermore, references to the defendant as a "pedophile" or "thug" by the prosecutor do not result in improper argument when raised by the evidence. *See Chapman v. State*, 349 S.W.3d 241, 247 (Tex. App.—Eastland 2011, pet. ref'd) (stating it is not improper argument to call defendant "pedophile" if raised by evidence); *Licea v. State*, No. 02-09-094-CR, 2010 WL 3377798, at *3 (Tex. App.—Fort Worth Aug. 27, 2010, no pet.) (mem. op., not designated for publication) (same); *see Long v. State*, No. 02-07-408-CR, 2009 WL 1372959, at *4 (Tex. App.—Fort Worth May 14, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that prosecutor calling defendant "thug" and "coward" was proper argument because terms' application to defendant was reasonable deduction from evidence) (citing *Kennedy v. State*, 193 S.W.3d 645, 657 (Tex. App.—Fort Worth 2006, pet. ref'd)). The State developed evidence that Appellant molested the nine year old victim, and this evidence allowed the State to label him as such during its argument.

In summary, we hold that the record does not reflect that the State struck at Appellant over the shoulders of his counsel because the prosecutor's comments were not directed towards counsel, the complained of statements were made by the State in response to defensive theories, a permissible basis for argument, and the State's characterization of Appellant as a "pedophile" and a "thug" was a reasonable deduction from the evidence. As applied to the ineffective assistance component of Appellant's cumulative error complaint, trial counsel cannot be faulted for failing to object to proper argument. Therefore, Appellant cannot satisfy the first prong of *Strickland*, which requires a showing that counsel's representation fell below an objective standard of reasonableness. Moreover, since the prosecutor's argument was not improper, counsel's failure to object cannot be considered as part of the cumulative error analysis. *See Chamberlain*, 998 S.W.2d at 238.

### 2. Accusations that defense counsel is unethical

In a related issue, Appellant also contends that the State engaged in improper argument when the prosecutor stated

> [a]nd then you do something that's hard—I didn't think [defense counsel] would go this low. And I know [defense counsel]. I've worked with him a bunch. I can't believe he went there. He's been railroaded.
> And he's sleepy. That shows you how big a deal this is to him. Just going to yawn. No

> big deal. Maybe I'm guilty. Maybe I'm not. No big deal. He doesn't care. He already got his chance to get up there and lie to y'all, thinks y'all will buy it.
>
> Railroaded. Accusing us, the DA's office, of coaching her. That's a low blow.

This statement was made in response to defense counsel's argument that

> I have no earthly idea how many times—certainly, it's more than five times that she's talked to [the prosecutor]. We already know several other people she's talked to about that. But the story is certainly refined and certainly more refined than it was the day [the forensic interviewer from the Children's Advocacy Center] talked to her.

Generally, as we have noted, the State may respond to defense counsel's arguments, which is what it did here. *See Brown*, 270 S.W.3d at 572 ( "[T]he record does not support [defense counsel's] insinuations that [the prosecutor] had directed the testimony of witnesses, and given that the insinuations were unreasonable and unfair, [the prosecutor] could properly respond to them."). However, as we have also noted, when the comment impugns the character of defense counsel, the prosecutor runs the risk of improperly striking at the defendant over the shoulders of counsel. *See Mosley*, 983 S.W.2d at 259. The prosecutor's comment in this case was directed at defense counsel personally, and the prosecutor undoubtedly attacked his integrity. But any complaint about this argument was waived when counsel failed to object to it. *See Cockrell*, 933 S.W.2d at 89.

In addressing Appellant's cumulative error argument, we are called upon to determine whether defense counsel's failure to object to this comment rendered his assistance constitutionally ineffective, so as to warrant reversal. Before condemning counsel as unprofessional, he should be provided a chance to explain his strategy. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Thus, absent a properly developed record, an ineffective assistance claim must usually be denied as speculative, and, further, such a claim cannot be built upon retrospective speculation. *Id.* at 835. The record is silent in this regard, and therefore, we cannot conclude that counsel was ineffective because he did not object. *See id.*; *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) ("An isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel."); *see also Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (holding

presumption of strategy not rebutted when record was "silent as to why appellant's trial counsel failed to object to the State's persistent attempts to elicit inadmissible hearsay").

Appellant nevertheless argues that no reasonable counsel would have failed to object to the prosecutor's statements. However, counsel could have considered that the jury might perceive the prosecutor as being overly harsh in his criticism of defense counsel. If so, the prosecutor may have hurt his credibility in his critique of defense counsel's argument, thereby gaining sympathy for defense counsel and Appellant. Thus, counsel's failure to object could have been reasonable trial strategy. And since Appellant has not shown error, we do not consider this alleged deficiency as part of our cumulative error analysis. *See **Chamberlain**,* 998 S.W.2d at 238.

### 3. Comment on invocation of right to remain silent

Finally, Appellant contends that Detective Fite was invited to comment on Appellant's postarrest silence. Specifically, the following colloquy took place between the prosecutor and Detective Fite:

> Q. After obtaining and getting the buccal swabs from the defendant, did you talk with the defendant anymore after that?
>
> A. I documented that I attempted to go by and make contact with him at the jail to, again, obtain a statement. That attempt was made, yes.
>
> Q. Was that successful? Did you speak with him or do you recall?
>
> A. If I recall correctly, he did not wish to speak with me at that time.

Once the issue of Appellant's failure to answer questions was interjected into the trial, counsel's decision not to object was one of several reasonable courses of action. Defense counsel could have decided not to object because it was a single isolated statement, and by objecting, he would have drawn more attention to Appellant's decision not to talk with Detective Fite after his initial interview. There was but one mention of Appellant's declining to answer questions and the prosecutor did not return to the subject. Accordingly, trial counsel could have reasonably concluded that objecting to, and thereby emphasizing the comment, was not a reasonable course of action. *See, e.g., **Stroman v. State**,* 69 S.W.3d 325, 332 (Tex. App.—Texarkana 2002, pet. ref'd) (counsel's failure to object to testimony about postarrest silence may have constituted trial

9

strategy); ***Ahmadi v. State***, 864 S.W.2d 776, 783 (Tex. App.—Fort Worth 1993, pet. ref'd) (same); *but cf.* ***Hall v. State***, 161 S.W.3d 142, 156 (Tex. App.—Texarkana 2005, pet ref d) (relief granted on ineffective assistance claim when counsel, in addition to other errors, did not object to evidence of postarrest silence as well as comments during opening and closing statements).

Consequently, based on the record before us, Appellant has not shown that the failure to object to this isolated statement concerning his postarrest silence resulted in constitutionally deficient representation. Therefore, as with the previously discussed alleged errors by trial counsel, we do not consider it in our cumulative error analysis. *See* ***Chamberlain***, 998 S.W.2d at 238.

### 4. Conclusion

Appellant concedes that none of these alleged errors would, standing alone, constitute reversible error. He contends that trial counsel's errors, when considered together, create sufficient cumulative harm to constitute constitutionally ineffective assistance of counsel. We have concluded that none of the actions of which he complains constitute error. As we have noted, nonerrors are not considered in the cumulative error analysis, and there must be more than one error in order to result in cumulative error. *See* ***id.*** Therefore, we hold that Appellant's cumulative error issues fail.

Appellant's first and second issues are overruled.

<u>**DISPOSITION**</u>

Having overruled Appellant's first and second issues, we ***affirm*** the judgment of the trial court.

<u>**BRIAN HOYLE**</u>
Justice

Opinion delivered June 19, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

10



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

**JUNE 19, 2013**

**NO. 12-11-00381-CR**

**DUJUAN C. BUREAU,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 7th Judicial District Court

of Smith County, Texas. (Tr.Ct.No. 007-0319-11)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*